Good morning, your honors. Joseph Maskevich appearing on behalf of the appellants of the Robinsons. The central question in this case is whether the district court had jurisdiction over a dispute concerning a non-exclusive easement that runs over land that the United States holds in trust for a Native American tribe. The district court reached the wrong conclusion on that issue, and it gave an expansive reading to the Quiet Title Act that none of the cases that the district court cited supports, and none of the cases the government has cited since. The Quiet Title Act applies when there is a dispute about title in land in which the United States holds an interest. Now it's true that an easement is the type of property interest that can come within the Quiet Title Act, but it doesn't follow logically or legally that any dispute about an easement is within the scope of the Act. The common thread in the cases that have found the Act applicable all have involved factual situations where the plaintiff's claim against the government would either diminish or defeat the government's title or impose new and additional restrictions on it. That was true of this court's decisions on the Schultz and Narimor cases. That was true of this court's decision in the Metropolitan Water District case. It was also true of the Northern District's decision in the Proshkul case. In every one of those, the plaintiff's claim, if successful, would have impaired the title that the United States had. This case stands on a much different foundation. I suppose the government, I mean, the government really hasn't said anything at this point about what its defense might be. But suppose its defense were actually the easement does allow us to take away the underpinnings and create a subsidence problem. Would that be a Quiet Title Act? I didn't quite catch the last one. I was trying to come up with a hypothetical where their defense was something about the nature of the easement. That is, their understanding of the easement allows them to do whatever it is they're doing. Sure. And you say, well, no, it doesn't. Does that become a Quiet Title issue? I think it would depend upon the circumstances. Certainly there could be situations where there is ambiguity about what the easement prescribed. That was the case in the Proshield matter, where the plaintiff had given an easement to the government at some time in the past that allowed access to Native American lands, which at the time were used exclusively for residential purposes. And over time, a casino was developed, and much greater traffic occurred over the easement. And the plaintiff argued that, well, the easement was only for residential access. That was an additional term that would have restricted or impaired the nature of the government's title. But in this case, we have recorded documents that no one has disputed and, frankly, can't dispute, setting forth that there's a 60-foot wide easement for access. Now, if the government hasn't come forward and said, well, wait a minute, there is a later document that has changed the terms of the easement. Correction. Judge Berzon posed this as accepting that. Suppose if the litigation would go forward, there winds up being an argument, what's the meaning of that document? What does it mean we can or cannot do? If the Court decides the easement should be read broadly and grant rights broadly to your client, that has an effect on what the titleholder can do with the property. Couldn't that be said to affect its interest in the property? Your Honor, I don't think that's the nature of this case. The nature of this case – Well, we'll find out better from the government because I understand. I have the same question. But then I get to the next question, which is the nature of sovereign immunity is supposed to protect you from having to litigate. And so the government is coming in here, and I think the reason they're playing their cards the way they are and not trying to say what their defense would be because they're trying to stand on the proposition, we don't have to get involved in the defense. We've got immunity. Well, it's a little bit of chicken and egg. You know, we can't be quite sure what the dispute's about until we find out more about the dispute, and maybe that determines the outcome here. But let's take it a step further. Suppose the government counsel in a few minutes will stand up and say, we anticipate there will be a dispute as to the rights granted by this easement. Then what does that mean for us? Or what's your understanding as to what it should mean for us? Well, Your Honor, I think, again, looking at the cases, if the government had a culpable claim that that was the case, there would be evidence in this record of that effect, because this was a motion to dismiss that was based upon evidentiary submissions. Has the government filed an answer? I'm sorry? Has the government filed an answer of any kind? No. Yes. It has filed an answer. An answer is in formal answer to the complaint or answer is in response? No, I'm sorry. They made a motion to dismiss for lack of subject to the complaint. No. So we don't know what their defense is. Well, except that the motion to dismiss did include substantial evidentiary submissions, as you can tell from the excerpts of record we filed. And the motions to dismiss customarily have to, because you've got to put at issue, in this case, the Indian tribe. Exactly. There will be motions to dismiss that involve a purely legal question. But in this case, evidence was submitted. The evidence would be limited to establishing the basis for the sovereign immunity. I mean, nothing there really you couldn't say if the case went on, you wouldn't be able to say that the government had waived any arguments that it might have with regard to the scope of the easement. I mean, I understand. You're doing the best you can with the record we've got, and that's what we're doing. Correct. But what I'm really saying is we need to peer around the corner somehow in order to understand what this dispute's about. But at this stage, we don't know really what the dispute's about. Well, I think there are two answers to that. I agree with Your Honor that we are dealing with a limited record, and that does handicap us all to a certain degree. And I'm not suggesting that the government has waived any arguments that it may have. But be that as it may, again, we are talking here about a 60-foot wide easement. That's undisputed. And we're talking primarily about encroachments, physical encroachments, that in effect make the easement substantially less than 60 feet wide. Now, if that type of – Does an easement, as a matter of property law, does an easement inherently mean you can't have any physical objects within the width of the easement? I believe, Your Honor, that under California property law, that if you erect physical encroachments, which, again, change the character of the easement entirely, that is impermissible. See, I'm doing this not because I'm trying to – No, I – I'm trying to explore what the nature of this dispute is and try one more step in this direction. I mean, a lot of times you have access easements, easements for utility lines and so forth, that go through areas where it's not just a broad strip of grass and nothing else. Other things are going on in that area, but you have available access. The road itself, I guess, is 20 feet wide. There's not a suggestion there's an automatic right to have a 60-foot road, so it may be that there's an area within the easement that could – the easement could be consistent with physical objects. The point of this is that dispute wouldn't be about title, wouldn't be about the rights of the property owner. It would be more specifically factual disputes with regard to the nature of the obstructions. I think that's correct. I think that is at bottom the nature of the dispute in this case. And to resolve that dispute, the district court would not have to get into questions about title. Going back to your question about the government's position, they have made the argument that title may be in dispute, but I have searched the record and I cannot locate any page in the excerpts or anything else for that matter that supports that claim. Again, they're not arguing that the easement as recorded has been superseded or altered by any subsequent document or understanding between the parties. So we're dealing, as I was just saying – But suppose – to make my hypothetical a little more concrete, suppose their position were that this easement only requires that there be enough – that there be – that the road be usable. And your position is no, it requires that there not be anything in – any physical encroachment within the 16 feet. Now, is that a different property interest or is it a dispute about which side of the quiet title issue would that fall on? Because that's what I sort of intuit is going on here. Well, I think, in all fairness, I would have to agree that if there were a dispute about whether or not the easement allowed the encroachments, then the Quiet Title Act most likely would apply. My reading of the cases suggests that. Frankly, I'm not aware of a case that really speaks to this particular situation. All I can do is extrapolate from the cases on point. But I do believe the Quiet Title Act would apply in that circumstance. But I don't think – certainly at this stage, the Court has enough comfort to make a determination that that's what this case is about. Okay. Thank you very much for giving a minute of your time. Thank you. Good morning, Your Honors. May it please the Court, my name is Tamara Rountree and I represent the United States. I'd just like to address a few preliminary matters, the first being that the only issue this Court has to address in order to resolve this case is whether the Robinsons claims fall within the scope of the Quiet Title Act. It's very difficult to do that on the current record. That's the problem. I can appreciate that. But I simply just want to indicate, for example, that the Court need not address whether the Indian lands exception applies here because the parties do not dispute that if the Court finds that the Quiet Title Act is triggered, that that exception does apply. Plus the parties agree that if we thought the Quiet Title Act didn't apply, that we should remand. Exactly. Now, what I would like to point out, Ed, is that the excerpts of record page 323 is the only document that we're working here that describes the easement. It states that the easement is for a road and for public utilities and it's 60 feet wide, period. So if we look at the issue the Court has to address today, we'll find that the claims the Robinsons have raised do fall within the scope of the Quiet Title Act for two reasons. It's because of the nature of the claims and because of the nature of the determination this Court would have to make to resolve those claims. Turning to the nature of the claims, in the ---- Suppose your ---- it seems to me to turn entirely on what your defense is and we don't know what it is. If your defense was, no, there isn't any curb on ---- and these encroachments don't exist, for example, that they're wrong, they're not there, then there wouldn't be any quiet title problem. We can't tell. We don't know what the defense is. Your Honor, if I may phrase it slightly, if I could just continue and I'll get to your point. The Robinsons have claimed that this is simply a matter of the Court looking at these documents say X and so the government did or didn't do X, it's that simple. It's not that simple. The Robinsons haven't pointed to one provision or term or condition that says that the alleged actions taken by the tribe are inconsistent with the bundle of sticks in their property rights. That's what this Court has to determine. It's not whether, for example, is the fire hydrant there or the water or the public utilities. No, that's not the issue because you haven't advanced a defense. We don't know what the issue is. The issue, in order for this Court to determine whether what's been alleged is at all inconsistent with a property right, it has to know what the property right is. The question, I don't think the Robinsons are asking the Court to determine if the physical structures are there. The question is, is the placement of, for example, a fire hydrant or public utilities of gas and water, is the placement of those structures inconsistent with the tribe's property interest in its land and in the easement? It's not whether they're there. It's whether they're allowed to be there by the – as dictated by the tribe's property interest. The only thing the tribe – But the tribes, the Robinsons. Well, and actually the Court has to make both determinations. Are the Robinsons, are their bundle of – the bundled rights that they have, does  You know, their position, as I understand it, let's take it at the baldest. It's that we have a 60-foot easement for a road, and that means that all 60 feet have to be passable, and they're not. We don't know whether the government is agreeing with that or disagreeing with that. But at this point, for purposes of jurisdiction, the Government doesn't have to say what its position is on that as a legal issue. Well, the case law seems to indicate otherwise, because the case law seems to draw a line between instances in which the dispute is actually – is about the use of the property versus about the interest in the property. And we have no idea which one that is going on here. The Court can't answer the question in any – under any rubric, if you will, until it determines what the tribe's actual property interest is. If the tribe is allowed to put a fire hydrant not in the middle of the street, as you pointed out, Judge Clifton, the road is 20 feet wide. That means we have 20 feet on either side. That's where the hydrant is. It's on the easement. That's where the public utilities for gas, electric, and water are. They are on the other portions, not in the road. So even if the easement were as explicit as saying there's got to be passage at all times with no instructions or obstructions, and that's not the case here. There's been no indication that there's any obstruction. It could very well be that the tribe's property interest consists of being able to put a fire hydrant on the non-road portion, on the buffer or the berm. But we don't know that, and the Court can't resolve the question of whether the hydrant or the public utilities are in violation of anything until the Court knows what the tribe's property interest is, or by the same token until the Court determines what the Robinson's property interests are. Again, it's not a question of what's there. It's do the property interests allow for it to be there. If the document, for example, if an easement or some other title, some other document that governed title said that, for example, public utilities could be put on the other 20 feet, well, then that's consistent with the tribe's property interest, and we don't have a problem here. But the problem I'm having is simply a procedural one. Okay. It's whether any of the things that you're describing that could be at issue are at issue. What if we said, okay, go forward at least to the point of figuring out what the ‑‑ might be none of that, and the government might walk in if it had to defend on the merits and say, you know, we agree that this easement is exactly what you describe it to be, because given the government's posture, which is that it has sovereign immunity, it would be able to simply flaunt the easement as well. There's no reason to think that it has a good faith fight over the scope of the easement, because since it doesn't have to defend itself, it could simply be saying we don't care whether we have a right to do it or not do it. We're doing it anyway. Your Honor, I apologize if I'm suggesting the government's only argument is that there's sovereign immunity. The position is that this court, in order to address the issues that have been put forth by the Robinsons, the court has to determine the property interests of the respective parties. Therefore, because you've got to make that ‑‑ and there was an effort at mediation, and it was purely a question of putting a hydrant in the wrong place where everybody agrees on the property rights, we wouldn't be here today. So I hear what you're saying, I think. But that does require some projection on our part, because based on the record so far, we don't know that it isn't simply a problem of an engineer putting the hydrant in the wrong place or misreading a map, and doggone it, there's no dispute about the property right. That's just a mistakenly placed obstruction. Now, the record doesn't really say to us at this point enough about the nature of the dispute, or does it, to make us confident as to what exactly will turn out to be the dispute if this case were allowed to go on. If the court is of the impression that the record isn't full enough, or even if it were ‑‑ no, actually, that's not the case. Based on the case that's before this court now, in order to make a determination as to whether the tribe could take the actions it allegedly took, the court would have to address the property interest, because there's no other issue for the court to resolve. To address the property interest doesn't mean there's a dispute about the property. Let me take my crazy hypothetical. It turns out that everybody agrees what an easement means under California law. But when people were out there putting light poles, for example, they got the line wrong, said they put the light poles where they're not supposed to put light poles, and it causes an obstruction. Or a curb. A curb is put in such a way so you actually can't get the access that the easement's supposed to get, a purely engineering type or technical problem. If that were the problem, then you wouldn't have any dispute with regard to the property rights. You just have a mistake. Let me take an even wilder example. Suppose somebody in the tribe decided we don't like a road going through here. We're putting up a wall. Now that there's much dispute that the easement wouldn't permit you to put up a wall, it would be argued this could affect the tribe's rights. But as a practical matter, it isn't the property right that's in dispute. It's whether the wall is consistent with the undisputed easement. Well, like I say, I can pretty well figure out what this case is likely to be about, but I'm not sure the record makes it explicit at this point that that's the case. So what is it in the record that gives us confidence that this is really going to turn out to be interpretation of the easement as opposed to a mistaken obstruction? The government argued below, and actually an answer was filed in this case, and the government argued below that it is disputed. There is a dispute as to the use of the land. So what the court now has before it ---- The use is not the point. That's the problem. The dispute has to be not over the use of the land, but over whether the property interest extends to the use of the land. Well, then I actually am mistaken and I'm stating it in shorthand. It's a question of the exercise of the ownership interest in this land. And that's the question that has to be answered as a threshold issue. And because of the nature of that question and because of the nature of the determination that the court has to make, which is one that goes to the bundle, to the essence of the bundle of sticks in the property right here, that's why it falls within the ---- What do you point to in the record or in the pleadings that makes that clear to us? Is there a section of the ---- I don't think I have the answer in my ---- I apologize. I'm not certain exactly what you're after, Your Honor. But the only thing I can ---- What is it? You say that there was an answer filed and there's a paragraph of the answer that says this? That says that this is a dispute, that clarifies that this is a dispute about the scope of the easement and not about the issue. I cannot tell you that that's an answer. That's what was argued ---- that's what the government argued in the district court. That was the position. I'm sorry, I don't have the answer before me. But if the only document I can point you to, and I think you might want to ask that of counsel, of appellant's counsel, is the easement or the document that speaks to the easement itself. And because it ---- This is the concern. The concern is that since what the government is claiming is immunity, if we don't let the case get far enough down the ---- there would be an incentive or there could be an incentive to simply plead the immunity in a case in which the ---- in order to avoid having to litigate anything, in which there was clearly encroachment on an undisputed easement. And we have to know enough to know that that's not going on. And how do we know that? If the United ---- let me give you an example I think that would be more clear. And it goes to the question of whether the United States has a colorable claim that the actions alleged do fall within the scope of the property interest. If, for example, an easement stated that it is for a right of passage that must be clear at all times, that's the ---- here's my hypothetical, and that's the easement. That's how it's phrased. The United States erects a gate. It goes across the entirety of the easement denying access. It then says to us we're claiming that ---- and we're dealing with an Indian land, and it says we're interposing our immunity because the Quiet Title Act doesn't apply. And we say, well, gosh, that really looks like it violates the easement. And you say, well, our position is it doesn't. Now, what do we do next? You're altering my hypo. My hypo was going to be the government wouldn't have a colorable claim to say that we can block the entire easement given the language of the easement. Again, I go back to we have a 60-foot easement for a road and public utilities. And arguably the structures here, the fire hydrant, the water, the gas, and the electric, do qualify as public utilities. As it appears here, the government hasn't acted, the government slash tribe, has not acted outside of the scope of the bundle of sticks. So you accept the proposition that there could be a dispute of this nature that actually doesn't trigger sovereign immunity, but it would be limited to the kind of dispute where you're stuck in the gate. And there's not a dispute about the scope of the easement. It's simply whether the behavior is consistent with the undisputed scope. But you further say this isn't that case. And you think it's sufficiently established in the record that it isn't that case. Do I understand your hypothetical correctly? Given all that we have to work with in terms of what can be done or can't be done under the easement, and that is, again, I apologize for repeating, it's a 60-foot easement for a road and public utilities. When we have more nuanced claims of what the government has or hasn't done, the question of what the government is or isn't allowed to do on its property, the tribe co-owns this easement and owns the underlying land. Because we do have very competent counsel, I'm going to ask my colleagues to indulge me for another question on a slightly different subject. Okay. And that has to do with the bottom-line result from all of this of what you're asking. Basically, it says there's not a remedy here. This may be a legal wrong, but there's not a remedy available. And I understand the Supreme Court has made it very clear that the fact that there may not be a remedy is not enough to create one. Sovereign immunity is what it is. But to what extent should we be guided as we try to work our way through here to say, well, because the end result may be a legal wrong, possibly, but no remedy, we ought to be careful not to get to the conclusion that sovereign immunity applies until it's absolutely certain there's no place for us to go. I mean, no remedy is not a very attractive outcome because you're basically leaving the parties, who in this case and the facts of this case are certainly sympathetic for the Robinsons because when they got this easement and made their plans, they had no idea this was going to turn out to be United States trust land because the Indian tribes acquired the parcels later. So understanding that no remedy is not an attractive result, is there a reason why we shouldn't be extremely careful before we get to that to make sure there's not another basis for not putting us into that predicament? Your Honor, as phrased, another basis is actually inconsistent with case law on this. It's not we can't possibly, neither the Robinsons nor the court, nor can the government offer a back doorway to get around the Quiet Title Act. And Congress has recognized, as has this Court. That's not the question. The question is how clear does it have to be on the record that the Quiet Title Act does apply, given the fact that the result of having it apply is no remedy? If the court has to make a decision as to what the property interest is of either parties or the respective parties, the interests of both parties, then the Quiet Title Act applies. And I apologize. It's really quite simple, that simple. And that's what this case would require the court to do. Thank you very much. And I have one. Counsel, I'd like to ask a question. This is not part of the record. Have you ever considered mediating this issue? I'm pausing because I'm trying to determine if the parties did in district court. And I don't believe there's been an attempt. I'm sorry, I'm not. The reason I even suggest that is that there are obviously lots of concerns here that might be handled through a mediation in addition to what's happened on the Eastman as well. And I won't force you to say whether you'd be open to mediation. I just wondered if you had tried or if it had been considered. And counsel can correct me. I'm sorry because I'm new to this case on appeal. But as I said, I'm not certain that it occurred below. Thank you very much. The point that you're on next. Thank you very much. Just a few points, and I'll start with Judge Nilsen's question. There have been extensive efforts to mediate and settle the case that began before the lawsuit was filed and have continued during the pendency of the case in the district court as well as during the pendency of this appeal. They have not been fruitful. It hasn't been for lack of effort. Part of it is that the tribe as a party has to sign off on any settlement, and the tribe has been recalcitrant in that matter. Thank you. So what is your answer to the representation that this case can't be decided without deciding the scope of the easement and that the scope of the easement on its face doesn't answer the question of whether these particular improvements or non-improvements are a violative of the easement? I think, Your Honor, that that question highlights, I think, what I see as the ultimate weakness in the government's position, and that is I don't think the Quiet Title Act can be construed so broadly as to apply whenever a property interest is implicated in a dispute. There has to be some dispute about title. And contrary to what counsel said, you know, this isn't a case just about the location of a fire hydrant. If you look at the excerpts at 152 to 153, some of the encroachments are described. There was a cut into the easement that encroached 20 feet into the easement. In another spot, there was a curb that encroaches 15 feet into the easement. Again, the easement. What's a cut? They created a slope. They undercut the easement and created a slope so that area, 20 feet of the easement is unpassable. Well, but did it affect the road? The problem I face is that I'm not sure that the law is clear that the easement as described here means you have to keep all 60 feet width available for passage. If, in fact, the road is unaffected and utilities can go through the slope and so forth, doesn't that start to implicate the scope of the easement issue? I don't think so, Your Honor. Again, I don't think the Quiet Title Act has ever been construed that broadly, and I don't think this is. Your argument is that the Quiet Title Act only applies to the question, essentially, is there a 60-foot easement, but not to the question of what the incidence of that easement are. Right. That's correct. Do you have the authority for that? I'm sorry? Do you have the authority for that? No, as I indicated before, this is a unique case so far as I can tell. It doesn't seem so unique because an easement by its nature is less than title. It is only about certain uses. That's what an easement is. You can use it for X. So the question is, what can you use it for? Because an easement by its nature is about use. No, that is correct, but there are disputes that add legal strictures to the nature of the use. The Proshield case is an example of that, residential versus commercial use. It's the Indian exception that makes this like a mirror image difficult. If I'm representing a landowner and have this dispute only just regular U.S. government land, we don't have the Indian tribe involved, and I'm deciding what do I do? I think I assert, well, there's a waiver under the Quiet Title Act. This is sufficiently related to the Quiet Title, and so I go into court affirmatively asserting that. You're not in that position. I understand that. I'm not saying you've taken that position, but I do have this mirror. It's like I'm looking at a reflection. Things are backwards because this exception keeps you from getting to court, which seems perverse, and yet here we are. All right. I haven't found any precedent that speaks to this problem very closely, and having read everything you've submitted, it doesn't sound like anybody else has either, so it's this combination of ingredients that makes this difficult. No, that is the dilemma we face. However, there are certain cases such as, I believe, the Ginsberg case out of the Second Circuit or the Third Circuit, where the plaintiff invoked the Quiet Title Act as a basis for jurisdiction. The court said, no, this dispute over whether rent was owed under the lease doesn't involve title. Over what under the lease? Over whether rent was owed under a lease. It was basically an eviction proceeding. And I think, you know, this place is far closer to Ginsberg than it is to the cases that have held the Quiet Title Act to apply. But, again, thank you. I thank both of you for a very useful argument, handing out compliments further. In an interesting case, the case of Robinson v. United States is submitted.
judges: Nelson D. W., Berzon, Clifton